# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **DAVID ARMSTRONG,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 05 C 3059** |
| **v.** | ) | |
| | ) | **Magistrate Judge Morton Denlow** |
| **JO ANNE B. BARNHART,** | ) | |
| **Commissioner of Social Security** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This case comes before this Court on Plaintiff's motion to reverse the final decision of the Commissioner of Social Security and the Commissioner's cross-motion for summary judgment. Plaintiff, David Armstrong ("Plaintiff" or "Claimant"), challenges the decision of Defendant Jo Anne B. Barnhart, Commissioner of Social Security ("Defendant" or "Commissioner"), claiming that her denial of his request for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") should be reversed or remanded because: (1) the Administrative Law Judge's ("ALJ") step-three determination was patently wrong; (2) the ALJ's step-four determination was patently wrong; (3) the ALJ's credibility determination was patently wrong; and (4) the ALJ failed to consider all of the vocationally relevant testimony of the Vocational Expert ("VE"). For the reasons stated below, this Court grants Claimant's motion to reverse and remand the final decision of the Commissioner and denies the Commissioner's cross-motion for summary judgment.

# I. BACKGROUND FACTS

## A.    PROCEDURAL HISTORY

Claimant filed an application for DIB and SSI on November 12, 2002, alleging a disability since August 1, 2000 due to affective/mood disorder.   R. 51-3, 282-83.   The application was denied initially and again upon reconsideration.  R. 21-6.  On December 9, 2004, ALJ John L. Mondi ("ALJ") held a hearing on the question of disability.  R. 296-321.  Claimant, who was represented by counsel, testified at the hearing.  R. 299-315.  James Breen, a VE, also testified.  R. 315-20.

On January 26, 2005, the ALJ found Claimant was not disabled because he could perform a significant number of jobs.  R. 10-18.  On April 1, 2005, the Appeals Council denied Claimant's request for review.  R. 5-7.

Claimant now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  The parties have consented to this Court's jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c)(1).  This Court conducted an oral argument on May 10, 2006.

## B.    HEARING TESTIMONY – DECEMBER 9, 2004

### 1.    Claimant's Testimony.

Claimant was 52 years old at the date of his hearing.  R. 300.  He is divorced and has three children.  *Id*.  Claimant has a college education.  *Id.*  His past relevant work includes employment as a mortgage broker, mortgage company owner and a car salesman.  R. 301-03.  His last day of employment was at some point in August of 1999.  R. 301.

Claimant has a bipolar disorder. R. 303. He suffers from both manic and depressive periods, with depressive periods accounting for 70% of his disorder. R. 304. Claimant had five hospital stays to treat his bipolar disorder beginning at age 29. *Id.* He attempted suicide three times in 1999. R. 301, 305. In one month, he goes through three cycles characterized by either mania or severe depression. R. 308. He has no periods of equilibrium and has constant thoughts of suicide. R. 308-12. Claimant's father was institutionalized and diagnosed with a similar disorder. R. 310.

Claimant has a severe sleep disorder and he will go for six to seven days without sleep. R. 304. Although he takes medication, he never sleeps more than two hours a night. R. 308. After the second or third day of insomnia, Claimant begins to hallucinate. R. 312. These episodes of insomnia occur at least three times a month. R. 308.

Claimant lives in the basement of a friend's home. R. 306. He no longer drives a car and he relies on public transportation. *Id.* He visits with his children and can walk a few blocks to the store. *Id.* During the day, Claimant keeps to himself and tries to read in short spurts. *Id.* Claimant has difficulty putting sentences together and has memory problems. R. 307. He has trouble engaging other people and isolates himself from the public. R. 309. He does not interact with his neighbors. R. 314.

Claimant has been on medication since he was 29 years old. R. 305. Since then, Claimant has been on 20 to 22 different medications. R. 304. Additionally, Claimant underwent shock therapy in 1999. *Id.* At the time of his testimony, Claimant was taking

Remeron and he had been taking a sleep medication, Restoril, for five years. R. 305. He stopped taking Restoril, however, because it was addicting. *Id.*

Up until a month before the hearing he had been seeing a psychiatrist, Dr. Roxanne Pellela-Cobler ("Dr. Pellela-Cobler"). R. 307. He stopped seeing Dr. Pellela-Cobler because he could not afford her treatment or the medication. *Id.* Claimant is not insured but receives aid from his mother and has a clinic that refills his prescriptions. R. 307-08.

### 2. James Breen - Vocational Expert ("VE").

James Breen, a VE, testified regarding existing jobs in the economy which might be suitable for Claimant. R. 50, 315-20. The VE stated that Claimant's past relevant work consisted of three different positions: (1) car salesman, which is light work and semiskilled; (2) mortgage loan processor broker, originator and broker, which is sedentary and skilled; and (3) mortgage company manager, which is sedentary and skilled. R. 316. The ALJ asked the VE if there are any jobs for a hypothetical person, who is 52 years old, has the same work and educational background as Claimant, and who has the same moderate limitations as Claimant. R. 316-17. The VE responded that jobs are available for such a hypothetical person. R. 317. However, the VE opined that Claimant could not return to any of his past work because of his limitation in interacting with the public. *Id.* The VE stated there were ample opportunities in manufacturing and production to allow a person to work by himself. *Id.* Claimant could perform unskilled and lower-end, semi-skilled jobs such as a punch press operator, as well as unskilled light work such as an assembly press operator, and packaging machine operator. *Id.*

The ALJ then asked the VE what lines of work are available for individuals who have memory problems and must be retaught a job every two hours. R. 319. The VE responded that the hypothetical person would be unemployable because an employer will not take the time to train an employee every two hours. *Id.* Finally, the ALJ asked if all of the Claimant's testimony was accepted as an accurate description of the Claimant's capabilities, would the Claimant be able to work. *Id.* The VE responded that he would find Claimant unemployable due to his manic depressive condition, insomnia and inability to socialize with anyone outside of his immediate family and close friends. R. 319-20.

## C. MEDICAL EVIDENCE - MENTAL HEALTH

### 1. Hospitalizations in 1999.

Plaintiff was hospitalized from January 8-22, 1999 after he overdosed on antidepressant medication and slashed his wrists. R. 135-58. He was diagnosed with major depressive disorder superimposed on dysthymic disorder;[1] bipolar disorder and pathological gambling were indicated as "rule out" diagnoses. R. 146.

In his social assessment, Claimant reported being depressed since age eleven with suicidal ideation. R. 156. Claimant reported persistent symptoms of insomnia and depression, insecurities about his mental health, and depression that could reach a point where he was unable to work. *Id.* He felt estranged from his family, isolated himself, was

---

[1]A disorder of the mood, less severe than a major depression, marked by a loss of interest in activities previously enjoyed, described by the patient as a feeling of being in the dumps, and lasting more than two years. 2-D, <u>Attorney's Dictionary of Medicine</u>, 5402, 2005.

unable to sleep, felt like gambling and had an increase in depression and appetite. *Id.* Upon discharge, Claimant was also diagnosed with adult antisocial behavior. R. 139.

Following a suicide attempt on June 26, 1999, Claimant was brought to St. Joseph Hospital. R. 216. On July 8 and 10, 1999, Dr. Anwar Syed diagnosed Claimant as depressed and treated him with electroconvulsive therapy ("ECT"). R. 128, 132. Dr. Syed diagnosed Claimant with major depressive disorder, recurrent type, severe. R. 218. Claimant was discharged on July 2, 1999. *Id.*

In December 1999, Claimant was hospitalized and diagnosed with major depression following a third suicide attempt. R. 170-204. He was discharged on January 14, 2000. R. 176.

**2. Dr. Sandeep N. Gaonkar – Psychiatric Evaluations - July 8, 1999 to August 3, 2000**.

Claimant treated with Dr. Sandeep N. Gaonkar ("Dr. Gaonkar"), a psychiatrist. R. 229-45. On August 19, 1999, Dr. Gaonkar diagnosed Claimant with major depression with anxiety features. R. 237. On August 25, 1999, Claimant reported feeling well and sleeping a little better. R. 236. On September 15, 1999, Claimant continued to improve. R. 235. On September 29, 1999, Claimant still complained of insomnia and anxiety but had no suicidal or homicidal ideations. R. 234. On October 6, 1999, Claimant reported he was not doing well following ECT. R. 233. On October 11, 1999, Dr. Gaonkar performed ECT on Claimant and diagnosed him with major depression. R. 121, 124. On October 13, 1999, Dr. Gaonkar performed ECT on Claimant and diagnosed him with major depression, severe. R.

112. On October 20, 1999, Claimant was diagnosed with bipolar type II disorder depressed. R. 232.

Claimant returned to Dr. Gaonkar in March 2000 to restart his medication. R. 230. Dr. Gaonkar noted that Claimant seemed to have coped well with separation from his wife and children and was working again for a mortgage company. *Id.* On August 3, 2000, Dr. Gaonkar reported that he had not seen Claimant for a long time; however, Claimant had no suicidal or homicidal ideations, or hallucinations, and seemed to be coping well. R. 230. From December 15, 1999 to November 16, 2002, Dr. Gaonkar prescribed medication for Claimant, primarily Remeron and Restoril. R. 240-45.

### 3. Dr. Mohammad Hamid, Ph.D. - Consultative Mental Status Examination - December 17, 2002.

Dr. Mohammad Hamid ("Dr. Hamid"), a licensed clinical psychologist, examined Claimant at the request of the state agency. R. 246-48. Dr. Hamid's mental status exam revealed that Claimant was ill at ease and anxious. His mood was down and depressed with blunted affect. His speech was logical and coherent but showed signs of pressure. He could comprehend, process, and implement instructions. His immediate, recent, and long-term memory were not impaired. However, during the interview, there were traces of major thought disorder or psychosis. Claimant denied suicidal or homicidal ideation. Claimant's fund of information was adequate as well as his ability to calculate. *Id.*

Dr. Hamid diagnosed Claimant with major depression with depressive features and bipolar disorder with depressive features, which then seemed to be in remission. *Id.* In analyzing Claimant's competitive work capacity, Dr. Hamid found:

> While [C]laimant is articulate, possesses average intellectual ability, and physically appears to be in good health, his long history of depression and frequent hospitalizations, and poor work history, [Claimant] would have difficulty performing his tasks effectively.

R. 247.

### 4. DDS Physician - Mental Residual Functional Capacity Assessment & Psychiatric Review - January 29, 2003.

A mental residual functional capacity assessment based on the record evidence was performed by a non-examining psychologist, Dr. Patricia Beers ("Dr. Beers"), on January 29, 2003. R. 249-66. She made the following Functional Capacity Assessment:

> "Claimant is assessed under the diagnosis major depression. Although he claims to have memory and concentration difficulties these were not apparent during a recent mental status evaluation. He is able to understand, recall and execute most instructions. He demonstrated adequate social skill. However, he is socially avoidant suggesting he may be more successful in a socially restricted setting. His adaptive capacities remain grossly intact. Capable of SGA."

R. 251. This assessment was affirmed by a second state agency physician, John T. Tomassetti on October 24, 2003. *Id.*

A psychiatric review technique form completed by Dr. Beers, dated January 29, 2003, stated that Claimant had an affective disorder.[2]  R. 253.  She did not find a bipolar disorder. R. 256.  Claimant's affective disorder was evidenced by a pervasive loss of interest in almost all activities, sleep disturbance, psychomotor agitation or retardation, and decreased energy. R. 256.  The functional limitations resulting from Claimant's affective disorder were listed as: moderate restriction of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and four or more repeated episodes of decompensation, each of extended duration.  R. 263.

### 7.  Dr. Roxanne Palella-Kobler - Psychiatric Diagnostic Evaluation - September 23, 2003.

On September 23, 2003, Dr. Roxanne Palella-Kobler ("Dr. Palella-Kobler"), a psychiatrist, performed a psychiatric diagnostic evaluation of Claimant.  R. 268-74. Claimant reported severe sleeping problems since his 20's.  He had been treated with Restoril, Prolixin, and Elavil.  Claimant could go for four to five days without sleeping.  He had trouble with short-term memory and had trouble remembering what happened two hours ago.  Claimant's affect was stable but slightly subdued and his mood was "okay" but exhibited some depression.  She noted no delusions and found Claimant coherent and goal directed.  *Id.*

---

[2] A disturbance of mood accompanied by a full or partial manic or depressive syndrome.  R. 256.

Dr. Palella-Kobler diagnosed Claimant with bipolar II disorder and she made numerous treatment recommendations. He told her he could not afford testing at that time. *Id.* He followed up with her on January 20, 2004, but then never returned. R. 108. She discharged him as a patient by letter on September 8, 2004 urging him to receive treatment for his bipolar II disorder. *Id*.

## D. THE ALJ'S DECISION - JANUARY 26, 2005

The ALJ found Claimant was not disabled within the meaning of the Social Security Act. R. 10-18. The ALJ assessed Claimant's application for DIB and SSI under the five step sequential analysis. *See infra*, Part II B (describing the disability standard of review). Under step one of the disability analysis, the ALJ found that Claimant did not engage in any substantial gainful activity since his alleged onset date. R. 14, 17.

Under the second step, the ALJ found Claimant's affective/mood disorder was a severe impairment. R. 14, 17. At step three, however, the ALJ determined Claimant's severe impairment did not "meet or medically equal" a listed impairment for bipolar disorder. R. 14, 17.

At step four, the ALJ determined Claimant's residual functional capacity ("RFC"). The ALJ first noted that Claimant's testimony regarding his symptoms and functional limitations was not credible when compared against the objective evidence and evaluated using factors in SSR 96-7p. R. 15. The ALJ noted that Claimant's use of medication and pursuit of treatment have been disproportionate and inconsistent "as well as his ability in the

past to engage in even very stressful and demanding work, indicating that with medication and treatment, his symptoms are attenuated to the point that he can work." *Id.*

The ALJ did not give controlling weight to Dr. Hamid's opinion that Claimant cannot perform tasks effectively. R. 15. According to DDS physicians, Claimant's impairments did not preclude substantial gainful activity, although Claimant does have "moderate" limitations in his abilities to interact appropriately with the general public. *Id.* The ALJ adopted this expert evidence because it was consistent with the medical evidence and Claimant's prior job history. *Id.* Finally, the ALJ determined that Claimant's RFC was unlimited physically, yet mentally Claimant was subject to "moderate" limitations. R. 16.

Under step five, the ALJ determined that based on the VE's testimony, Claimant would be capable of performing work in manufacturing and production settings, which are ample in number within the Chicago metropolitan area.[3] R. 17. Therefore, the ALJ concluded Claimant is not disabled. *Id.*

## II. LEGAL STANDARDS

### A. STANDARD OF REVIEW

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A decision by an administrative law judge, ("ALJ"), becomes the Commissioner's final decision if the Appeals

---

[3]The ALJ relied on the VE's citation of specific jobs in the economy: punch press operator (2,500), assembly press operator (24,000), and packer-machine operator (14,000).

Council denies a request for review. *Wolfe v. Shalala*, 997 F.2d 321, 322 (7th Cir. 1993). Under such circumstances, the decision reviewed by the district court is the decision of the ALJ. *Eads v. Sec'y of the Dep't of Health & Human Servs.*, 983 F.2d 815, 816 (7th Cir. 1993). Judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching his decision and whether there is substantial evidence in the record to support the findings. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A mere scintilla of evidence is not enough. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if "the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

While a reviewing court must conduct a "critical review" of the evidence before affirming the Commissioner's decision, *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000), it may not re-evaluate the facts, re-weigh the evidence, or substitute its own judgment for that of the Social Security Administration. *Diaz*, 55 F.3d at 305-06. Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching a decision and whether there is substantial evidence to support the findings. *Scivally v. Sullivan*, 966 F.2d 1070, 1075 (7th Cir. 1991). The reviewing court may enter a judgment

"affirming, modifying, or reversing the decision of the [Commissioner], with or without remaining the cause for a rehearing."42 U.S.C. § 405(g).

## B.    DISABILITY STANDARD

Disability insurance benefits, ("DIB"), are available to claimants who can establish "disability" under the terms of Title II of the Social Security Act, ("Title II"). *Brewer v. Charter*, 103 F.3d 1384, 1390 (7th Cir. 1997). Supplemental Security Income benefits, ("SSI"), are available to "disabled indigent persons" under Title XVI of the Social Security Act, ("Title XVI"). *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Titles II and XVI of the Social Security Act employ the same definition of "disability." *Id.* That is, an individual is disabled if that individual has the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for continuous period of not less than 12 months." 42 U.S.C. § § 423(d)(1)(A); 1382c(a)(3)(A). An individual is under a disability if he is unable to do his previous work and cannot, considering his age, education, and work experience, partake in any gainful employment that exists in the national economy. 42 U.S.C. § § 423(d)(2)(A); 1382c(a)(3)(B).

To make this determination, the Commissioner must employ a five step sequential analysis. 20 C.F.R. § § 404.1520(a)-(f); 416.920(a)-(f). If the ALJ finds at any step of this process a claimant is not disabled, the inquiry ends. *Ismahel v. Barnhart*, 212 F.Supp.2d 865, 872 (N.D. Ill. 2002). The process is sequential; if the ALJ finds that the claimant is not disabled at any step in the process, the analysis ends. Under this process, the ALJ must

inquire: (1) whether the claimant is still working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) if the claimant does not suffer from a listed impairment, whether he can perform past relevant work; and (5) whether the claimant is capable of performing any work in the national economy. *Id.*

## III. DISCUSSION

Claimant raises four issues for review: (1) whether the ALJ's step-three determination was patently wrong; (2) whether the ALJ failed to take into account Claimant's non-exertional impairments' effect on Claimant's physical RFC; (3) whether the ALJ failed to accurately assess the credibility of Claimant's testimony regarding the impact of his impairments; and (4) whether the ALJ failed to consider all of the vocationally relevant testimony of the VE. The Court treats each of these arguments in turn.

## A. THE ALJ FAILED TO CONSIDER SUBSTANTIAL MEDICAL EVIDENCE IN THE STEP-THREE DETERMINATION.

The ALJ found Claimant had certain functional limitations, yet the ALJ determined such limitations were only "moderate" to "mild." R. 14. The ALJ found Claimant's impairments did not meet or medically equal any impairment listed in Appendix 1, Subpart P, Regulation No. 4. R. 17. Claimant contends the ALJ assigned unnecessary weight to the DDS' conclusions, and neglected to include evidence from Claimant's treating physicians ("TP"). Furthermore, Claimant argues that the DDS never saw Dr. Palella-Kobler's submissions, and, therefore, the ALJ's reliance on the DDS's opinions is misplaced. Thus,

Claimant asserts, the ALJ erred in finding Claimant's impairments did not meet or equal Listing 12.04 of the Listing of Impairments. The Commissioner responds that the ALJ appropriately considered all the evidence in making his step-three finding.

Mental impairments are evaluated within the provisions of 20 C.F.R. § 416.920(a). Affective disorders are analyzed under Listing 12.04. In this case, at step three, the ALJ found that Claimant's "bipolar disorder is a medically determinable impairment characterized by decreased energy, sleep disturbance, psychomotor agitation and anhedonia." R. 14. This met the requirements of Listing 12.04A. However, the ALJ found Claimant did not meet Listing 12.04B because he did not meet at least two of the following:

1. marked restriction of activities of daily living;

2. marked difficulties in maintaining social functioning;

3. marked difficulties in maintaining concentration, persistence or pace; or

4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.04 B. The ALJ found only moderate limitations in Claimant's activities of daily living and mild limitations in social functioning, concentration, persistence, and pace. R. 14. The ALJ noted multiple episodes of deterioration, but "they were all in the past." *Id.*

The ALJ's conclusion is difficult to comprehend in light of the findings by Dr. Hamid that Claimant was suffering from "major depression," "evidence of a major thought disorder was present" and Claimant "would have difficulty performing his tasks effectively." R. 247-48. Dr. Palella-Kobler's evaluation also discussed conditions that implicate many elements

15

of Listing 12.04B, including insomnia sometimes lasting 2-4 days without sleep, crying spells, poor concentration, trouble with short-term memory, and bipolar II disorder. R. 270-74. Therefore, the ALJ's discussion of whether Claimant meets a listing is inadequate and requires further review to consider whether Claimant's limitations were "marked" or merely "moderate" and whether his episodes of deterioration were ongoing. *See Brindisi v. Barnhart*, 315 F.3d 783, 786-87 (7th Cir. 2003).

## B.     THE ALJ'S RFC ASSESSMENT SHOULD BE RECONSIDERED.

Claimant next argues that the ALJ failed to consider all of the medical evidence in determining Claimant's RFC. Claimant agrees that there is no limitation to his physical RFC, but Claimant asserts that the physical RFC is affected by Claimant's nonexertional impairments. For example, Claimant posits whether an individual with repeated bouts of insomnia could perform heavy work.

The Commissioner responds that Claimant has not alleged with specificity how his symptoms result in specific functional limitations. The Commissioner points out that the ALJ considered Claimant's insomnia, R. 13, as well as evidence regarding possible hallucinations. R. 14. The Commissioner further argues that the ALJ noted Claimant's prior suicide attempts, hospitalizations, and courses of ETC. R. 12-13.

In this case, however, the impairments may have some combined effect. The ALJ should take into account the impact of Claimant's mental impairment on his ability to perform heavy work. *Sims v. Barnhart*, 309 F.3d 424, 432 (7th Cir. 2002); 20 C.F.R. §§ 404.1523, 404.1520 and 416.920.

16

## C.    THE ALJ'S CREDIBILITY DETERMINATION WAS NOT ADEQUATELY ARTICULATED.

Claimant argues that the ALJ's credibility determination was patently wrong because the ALJ did not state what objective evidence he used or what factors SSR 96-7p offers. According to Claimant, the ALJ erred in making his determination based on Claimant's disproportionate and inconsistent use of medication and pursuit of treatment. The ALJ failed to take into account Claimant's difficult financial situation and Claimant's pursuit of treatment as late as January 15, 2003. Claimant further argues that the fact that Claimant may not have pursued treatment does not imply he does not have a serious medical condition. According to the Commissioner, the ALJ appropriately evaluated Claimant's credibility and found his allegations not fully credible.

The ALJ is afforded special deference in his credibility determination because he is in the best position to see and hear the claimant and assess his forthrightness. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). Unless the ALJ's assessment of credibility is patently wrong, the determination must stand. *Id.*; *Edwards v. Sullivan*, 985 F.2d 334, 338 (7th Cir. 1993). Again, a "reviewing court 'is not allowed to substitute its judgment for the ALJ's by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility.'" *White v. Barnhart*, 415 F.3d 654, 659 (7th Cir. 2005) (quoting *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003)). However, the ALJ must articulate a clear basis for his findings regarding the claimant's credibility. *See Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000). "The determination or decision must contain

specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight." *Brindisi*, 315 F.3d at 787.

In this case, the ALJ stated that the Claimant's testimony was "not credible" based upon comparison "against the objective evidence and evaluated using factors in SSR 96-7p." R. 15. The ALJ did not state, however, what "objective evidence" he used. Nor did he specify what "factors" SSR 96-7p offers. He based his conclusion on Claimant's current use of medication and pursuit of treatment, which the ALJ considered disproportionate and inconsistent. Yet his only reference was to Exhibit 12E/4. R. 106-08. The ALJ did not consider the fact that Claimant saw Dr. Goyankar as late as January 15, 2003. R. 267. The ALJ also failed to credit Claimant's statement that he has no medical insurance. R. 305.

The fact that Dr. Palella-Kobler terminated Claimant's relationship with her does not, in itself, attest to a want of symptoms or that a disability does not exist. In fact, in the termination letter, Dr. Palella-Kobler stated to Claimant, "I diagnosed you with Bipolar II Disorder." R. 108. That termination letter documents a continuing impairment. *See* R. 108, 270, 274. It also indicates that Claimant continued to attempt to obtain treatment. Moreover, while the fact that an individual may not have pursued treatment could certainly indicate a financial inability to do so, it does not necessarily imply that a less severe medical condition exists. In reviewing Claimant's credibility, the ALJ should consider Plaintiff's lifelong efforts to engage in gainful employment and the severe downturn he experienced in 1999,

which led to three suicide attempts. The credibility determination requires further analysis. *See Brindisi*, 315 F.3d at 787.

## D.     THE VE'S TESTIMONY IS DEPENDENT ON CLAIMANT'S RFC.

Lastly, Claimant argues that the ALJ failed to consider all of the vocationally relevant testimony of the VE. In the first hypothetical question to the VE, the ALJ asked what jobs an individual with moderate limitations in four areas[4] could perform. R. 316-17. The VE responded that many jobs existed in the national economy for such a hypothetical person. R. 317. In the ALJ's second hypothetical, he asked the VE about the employment prospects for an individual who had to be retaught a task every two hours. R. 319. The VE responded that such an individual is unemployable. *Id.* In his third hypothetical question to the VE, after fully crediting all of Claimant's testimony, the ALJ asked what the vocational outlook would be for such a hypothetical person? *Id.* The VE, again, responded that such an individual would be unemployable. *Id.* He said that an individual with Claimant's purported symptoms is manic and would be unable to work. R. 319-20.

The VE's testimony hinges on the ALJ's findings. On remand, the ALJ must determine if Claimant's RFC should remain the same and whether Claimant's testimony should in fact be credited. Therefore, the ALJ's determinations will impact the relevance of the VE's testimony.

---

[4]The four areas of limitation were: (1) the ability to work in coordination with or proximity to others without being distracted by them; (2) the ability to interact appropriately with the general public; (3) the ability to accept instructions and respond appropriately to criticism from supervisors; and (4) the ability to get along with coworkers or peers, without distracting them or exhibiting behavioral extremes.

# IV. CONCLUSION

Claimant suffers from major depression, bipolar II disorder, and severe insomnia. Yet, while he has had mental problems since he was 29, Claimant has always worked. Claimant managed a loan company, was a salesman, and even ran his own mortgage company at one point. In 1999, however, Claimant's mental troubles finally reached a tipping point: he attempted suicide three times and underwent electroshock therapy for treatment. Claimant has been unable to work since then. Because of his mental impairments, Claimant has trouble interacting with the public, working with or near other people, accepting instructions and dealing with authority, and generally getting along with peers or coworkers. Notwithstanding his impairments and their accompanying limitations, however, the ALJ found that Claimant is not disabled. The ALJ also found that Claimant's RFC is unlimited extertionally and he can perform even heavy work. Thus, the ALJ determined that there were available jobs for Claimant in manufacturing and production settings.

This Court possesses strong reservations about the ALJ's findings. In particular, the Court wonders how the combined effect of his impairments and limitations, the effect of his mind on his physical output, does not preclude him from working as a punch press operator, an assembly press operator, or a packer-machine operator. The Court remands the case so the ALJ can reconsider both the medical evidence in Claimant's record and the ALJ's findings. And should the ALJ reach the same conclusions, the ALJ must provide a better written record, a more thorough decision, incorporating all of the medical evidence and adequately

explaining how this troubled Claimant can work in the manufacturing and production industries with his mental makeup and absolutely no experience in either industry.

For the reasons set forth in this opinion, **Claimant's motion to reverse and remand the final decision of the Commissioner is GRANTED and the Commissioner's motion for summary judgment is DENIED.  The case is remanded to the Commissioner for a new hearing consistent with this decision.**

**SO ORDERED THIS 18th DAY OF MAY, 2006.**

_____
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**COPIES SENT TO:**

| | |
|---|---|
| Ashley S. Rose | Cynthia A. Brandel |
| 799 Roosevelt Road | Assistant Regional Counsel |
| Building 6, Suite 104 | Social Security Administration |
| Glen Ellyn, IL 60137 | 200 West Adams, Suite 3000 |
| | Chicago, IL 60606 |
| Counsel for Plaintiff | |
| | Counsel for Defendant |